[Civ. No. 47161. Second Dist., Div. One. Mar. 30, 1976.]

ROBERT D. KLEIST et al., Plaintiffs and Respondents, v.
CITY OF GLENDALE, Defendant and Appellant;
GREGG DEVELOPMENT, INC., Real Party in Interest and Appellant.

**COUNSEL**

Melby & Anderson and Jarrett S. Anderson for Real Party in Interest and Appellant.

No appearance for Defendant and Appellant.

Jones & Jones and Arthur T. Jones for Plaintiffs and Respondents.

**OPINION**

**THOMPSON, J.**—This is an appeal from a judgment of the superior court declaring that the City of Glendale failed to comply with the California Environmental Quality Act of 1970 in rezoning 63 acres of property from a zone requiring single family residences to a planned development zone permitting multiple unit construction. The judgment incorporates a writ of mandate directing the city to vacate its notice of determination with respect to an Environmental Impact Report (EIR) and its approval of the rezoning. The appealing city and subdivider contend: (1) a trial court finding of fact that the city council, the

decision-making body of the City of Glendale, did not review and consider the information contained in the EIR prior to taking action on the subdivision is not supported by substantial evidence; and (2) in any event, the city council was empowered to delegate review and consideration of the EIR to a special board created by Glendale city ordinance. We conclude that the city and subdivider have failed to establish that the key finding of fact is not supported by substantial evidence and that the city council's duty of review and consideration of the EIR is nondelegable. Accordingly, we affirm the judgment.

*The Statutory and Administrative*
*Scheme of the CEQA*

The California Environmental Quality Act of 1970 (CEQA) establishes a comprehensive scheme of accumulation and evaluation of data so that decision-making bodies of state and local governments may properly consider the impact of proposed discretionary projects upon the environment in exercising their discretion to approve or disapprove them. (See Pub. Resources Code, §§ 21000, 21001; Cal. Admin. Code, tit. 14, § 15012.) The broad outlines of the scheme are contained in Public Resources Code sections 21000 through 21174. Section 21083 of that code specifically delegates to the California Office of Planning and Research the preparation of guidelines for the implementation of the scheme. The state guidelines are contained in title 14 of the California Administrative Code. We use the shorthand designation of *"State Guidelines"* in later references to the Administrative Code.

In broad generalities, the statutes and guidelines envision that an initial determination shall be made concerning a proposed project's effect upon the environment. (Pub. Resources Code, § 21100; *State Guidelines,* §§ 15060, 15080, 15081.) If the public agency that plans to carry out or approve the project determines that it may have a significant effect upon the environment and is not of an exempt category, the agency must prepare "environmental documents" or contract for their preparation. (*State Guidelines,* §§ 15061, 15084.) If the project is to be carried out by a private person or firm, the responsible governmental agency may require the private person to supply information to aid in the initial determination and the preparation of an EIR. The information may be supplied in the form of a draft EIR. (*State Guidelines,* §§ 15061, subd. (b), 15085, subd. (a).) Where the project is to be carried out or approved by more than one public agency, the public agency with principal responsibility, defined by the guidelines as "the Lead Agency"

is responsible for the EIR. (*State Guidelines,* §§ 15030, 15064.) The lead agency must consult with other responsible agencies. (*State Guidelines,* §§ 15066, 15085, subd. (b).)

The lead agency must prepare a "draft EIR" and file a "Notice of Completion" (*State Guidelines,* §§ 15066, 15085, subd. (c)) in order to permit public review of the content of the draft report (*State Guidelines,* § 15085, subd. (d)) so that the agency may evaluate responses to the draft. (*State Guidelines,* § 15085, subd. (e).)

After evaluation of response, the lead agency must prepare a final EIR (*State Guidelines,* § 15085, subd. (f)) consisting of the draft EIR or a revision of the draft, comments and recommendations on the draft EIR either verbatim or in summary, a list of persons and public agencies commenting on the draft, and the response of the lead agency to significant environmental points raised in the review and consultation process. (*State Guidelines,* § 15146.)

The final EIR must be presented to the decision-making body of the lead agency. The lead agency must certify that the final EIR has been completed in compliance with the state guidelines and that its decision-making body or administrative official having final approval authority over the project has "reviewed and considered the information contained in the EIR." (*State Guidelines,* § 15085, subd. (g).) After making a decision on the project, the lead agency must file a "Notice of Determination," including the decision of the agency to approve or disapprove the project and the determination whether the project will or will not have a significant effect upon the environment. (*State Guidelines,* § 15085, subd. (h).) The EIR process should be combined with existing planning review and project approval processes utilized by the public agency. (*State Guidelines,* § 15086.)

Section 15050 of the *State Guidelines* requires each public agency subject to the CEQA to adopt its own procedures for the identification of projects which have a possible effect upon the environment, for the conduct of initial studies, for consultation with other public agencies and obtaining comments from them and from members of the public, for evaluation and response to comment, assignment of responsibility for specific functions to specific units of the public agency, and for preparation of EIR's. Section 15050 requires further that the agency's procedures contain "[p]rovisions for the review and consideration of environmental documents by the person or decision-making body who

will approve or disapprove a project," and "[p]rovisions for filing documents required or authorized by CEQA and [the state] guidelines." (Subd. (c) (8) and (9).)

Pursuant to section 15050 of the *State Guidelines,* the City of Glendale, on April 17, 1973, enacted an ordinance establishing environmental guidelines and procedures (the city guidelines) and created an environmental and planning board (Board) to carry them out. The city guidelines in essence delegate to the Board all responsibility for carrying out the state guidelines specified in the Administrative Code, from initial determination of a possible effect of a project upon the environment and receipt of information from the person planning the project through the adoption of the final EIR. The city guidelines require that the Glendale planning director, as secretary of the Board, file the notice of determination required by subdivision (h) of section 15085 of the *State Guidelines,* thus certifying that there had been compliance with CEQA and the state guidelines. The city guidelines also provide that "the Secretary shall certify that . . . the Board has reviewed and considered the information contained in the EIR." They contain no provision for review and consideration of the EIR by the Glendale City Council.

### Procedure in the Case at Bench

On July 10, 1974, Gregg Development, Inc., filed with the City of Glendale its request to rezone 63 hillside acres from R1/R1R, a single family residence zoning of limited density, to planned residential development, a less restricted zoning. With the request, Gregg Development also filed a request to subdivide the property and information to aid in the preparation of an EIR in the form of a draft report. On July 12, the city filed the notice of completion of a draft EIR, thus giving public notice of a proposed project likely to have an effect upon the environment. The draft was posted for comment and distributed to interested persons and government agencies on July 15. From July 15 through October 23, the Board took the steps required by the CEQA and the state guidelines, and held a number of public meetings.

On October 29, 1974, the Board adopted a final EIR, subject to "mitigating factors." It forwarded copies of the final EIR to the Glendale planning commission and to the city council. Copies were also forwarded individually to each member of the council. The documentation included Gregg Development's proposed draft EIR, an addendum by Gregg to the draft, and the Board's "Final Environmental Impact

Report." Communications to the Board, staff reports, and responses from the public were not included, the originals of such material being retained in the office of the planning director. On October 30, the secretary of the Board filed the EIR notice of determination required by the state guidelines, thus signifying the decision of the lead agency to approve the project. (*State Guidelines,* § 15085, subd. (h).)

On October 31, 1974, the Glendale planning division prepared a staff report concerning the project, recommending conditions under which the zone change and a tentative subdivision map would be approved. The conditions are related to the mitigating factors in the report of the Board. On November 4, the planning commission held a public hearing on its staff report. The report was transmitted to the city council on November 13. Beginning at 6 p.m. on November 19 and continuing until 3:30 a.m. on November 20, the city council held a public hearing on Gregg Development's request for a zone change and its proposed tentative subdivision map. On December 5, Gregg Development submitted revised plans to comply with the requirements of the planning commission. On December 24, the city council adopted a zone change ordinance as requested by Gregg Development but containing the conditions recommended by the planning commission.

Plaintiffs, suing for themselves and on behalf of "Deer Canyon/Oakmont Property Owners," filed a petition for writ of mandate to set aside the action of the city council. The petition alleges facts to the effect that the zone change was adopted without compliance with CEQA and that the EIR itself was procedurally and substantively defective. The trial court heard extensive evidence, including transcripts and tape recordings of sessions of the Board, planning commission and city council. It filed its findings of fact, including a determination that the Glendale City Council is the relevant decision-making body of the lead agency and that the council did not review and consider the information contained in the EIR before taking action on the project before it. The court accordingly concluded that the city council's action approving the zone change was ineffective for failure to comply with the CEQA and issued its writ of mandate directing that the council vacate its notice of determination and action approving the zone change. This appeal by the city and Gregg Development followed.[1]

---

[1]Only Gregg Development has filed appellant's briefs.

The parties are agreed that, for the purposes of the CEQA and the state guidelines, the City of Glendale is the lead agency and that its city council is its decision-making body for the purposes of changes in zoning. They agree also that the zone change is a project involving a substantial effect upon the environment so that the EIR requirements of the CEQA and the state guidelines must be followed. Gregg Development contends, however, that the requirements of CEQA and the state guidelines were met. It argues that the trial court's finding of fact that the city council did not review and consider the EIR is not supported by substantial evidence[2] and that, in any event, that function was properly delegated by the council to the Glendale Environmental and Planning Board.

### Substantial Evidence

Substantial evidence supports the trial court's finding of fact that the Glendale City Council, the decision-making body concerning the zone change, did not review and consider the EIR as required by the CEQA and state guidelines prior to its approval of the zone change. The minutes of the council meeting considering the zone change contain only one reference to environmental factors and that is in general terms by a councilman who stated them as a reason why he was voting against the project. The city guidelines adopted by the City of Glendale require that the secretary of the Board certify that the Board and not the council has reviewed and considered the EIR. In accord with the city guidelines, the notice of determination, which under the state guidelines is the final document certifying acceptance of the EIR for the purpose of the project and compliance with the CEQA and state guidelines, was filed by the Board prior to action by the city council.

Gregg Development argues that review and consideration of the EIR must be inferred from the fact that it was transmitted to the councilmen before they acted on the zone change and from the presumption that official duty has been performed. The presumption of performance of official duty, contained in Evidence Code section 664, goes only to the burden of producing evidence, however. (Evid. Code, § 630.) Here the evidence produced by plaintiffs negatives performance. Nor does the fact that the EIR was transmitted to the council members under the facts here present compel the inference that the document was reviewed and considered by them any more than does the fact that a horse was led to water compel the inference that it drank from it.

---

[2]At oral argument, the parties agreed that the factual issue is one for trial court determination.

Gregg Development argues that at some unidentified place in tape recordings of council sessions introduced in evidence at trial there is a showing that the EIR was considered. ■ As the appellant in the proceeding before this court, Gregg Development has the burden of establishing error in the action of the trial court. (*People* v. *Paramount Citrus Assn.* (1957) 147 Cal.App.2d 399, 407-408 [305 P.2d 135].) It cannot carry that burden by inviting the reviewing court to search the record for support of its position. (*People* v. *Klimek* (1959) 172 Cal.App.2d 36, 44 [341 P.2d 722].) Gregg Development, not having pointed to evidence contained in the tape recordings which supports its position, has failed to carry its burden of establishing that the recordings show consideration and review of the EIR by the Glendale City Council.

Finally, Gregg Development argues that action of the council approving the rezoning, subject to the conditions recommended by the planning commission, establishes the council's review and consideration of the EIR. ■ The trial court was not required to draw that inference since the imposition of the conditions could as likely have been the result of the city council's blind acceptance of the actions of the Board and planning commission as it could have been the result of review and consideration of the EIR.

## Delegation

■ Gregg Development's contention that the city council was not itself required to review and consider the EIR, since by ordinance it had delegated that function to the Board, is contrary to the CEQA and the state guidelines.

The state guidelines require that the decision-making body or administrative official having final approval authority over a project involving a substantial effect upon the environment review and consider an EIR before taking action to approve or disapprove the project. (*State Guidelines,* § 15085, subd. (g).) The requirement exists in part because "only by this process will the public be able to determine the environmental and economic values of their elected and appointed officials . . . ." (*People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 842 [115 Cal.Rptr. 67].)

Here only the Glendale City Council has the power to approve the project, the zone change. "Approval" is the decision by the public agency which commits it to a definite course of action in regard to an

intended project. (*State Guidelines,* § 15021.) The parties agree that only the city council was empowered to commit the City of Glendale to the zone change. The city council is thus the decision-making body to which the state guidelines refer. The state guidelines require that it review and consider the EIR.

Neither the CEQA nor the state guidelines authorize the city council to delegate its review and consideration function to another body. Delegation is inconsistent with the purpose of the review and consideration function since it insulates the members of the council from public awareness and possible reaction to the individual members' environmental and economic values. Delegation is inconsistent with the purposes of the EIR itself. That report is not an action but an information document. (Pub. Resources Code, § 21001, subd. (g); *State Guidelines,* § 15012.) The EIR cannot serve its informational function unless it is reviewed and considered by the governmental body which takes action having an effect upon the environment.

We thus conclude that the Glendale City Council was required itself to review and consider the EIR and could not delegate that function to some other agency of city government.

### *Effect of Deficiency in Glendale Procedure*

The Glendale City Council not having reviewed and considered the EIR, it failed to comply with the CEQA as amplified by the state guidelines. Since the council did not proceed as required by law, the city's notice of determination and the council's action approving the zone change must be set aside. (Pub. Resources Code, § 21168; Code Civ. Proc., § 1094.5, subd. (b).)

### *Disposition*

The judgment (peremptory writ of mandate) is affirmed.

Wood, P. J., and Hanson, J., concurred.

A petition for a rehearing was denied April 22, 1976.